**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Sotomayor Ortiz, | No. CV-23-00092-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Angel Sotomayor Ortiz's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 11, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 13, Def. Br.), and Plaintiff's Reply (Doc. 14, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 21–34) as upheld by the Appeals Council (R. at 1–4).

**I.   BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on January 8, 2020, for a period of disability beginning on December 19, 2018. (R. at 21.) His claim was denied initially on May 7, 2020, and upon reconsideration on October 20, 2020. (R. at 21.) On September 30, 2021, Plaintiff appeared telephonically before the ALJ for a hearing regarding his claim. (R. at 21.) On January 12, 2022, the ALJ denied Plaintiff's claim.

(R. at 21–34.) On December 15, 2022, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1–4.)

In the Decision, the ALJ found Plaintiff had the severe impairments of complex regional pain syndrome (CRPS), loin pain, hematuria syndrome (commonly described as blood in the urine), nephrolithiasis (commonly described as kidney stones), degenerative disc disease (DDD), varicocele (commonly described as enlargement of the veins in the scrotum), and depression. (R. at 23.) The ALJ evaluated the medical evidence and testimony and ultimately concluded that Plaintiff was not disabled. (R. at 34.) In so doing, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 24.) The ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform light work with some physical and environmental limitations. (R. at 26.) Based on the RFC formulation and the testimony of the Vocational Expert (VE) at the hearing, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such that Plaintiff was not under a disability as defined in the Social Security Act. (R. at 33–34.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation,

one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III.   ANALYSIS

Plaintiff raises the following arguments for the Court's consideration: (1) the "ALJ failed to consider the intersection of the psychological and physical effects of pain," and (2) the "ALJ's analysis of the severity of [Plaintiff's] symptoms is not based on substantial evidence." (Pl. Br. at 2.) The Court now examines these in turn.

**A.     Consideration of Psychological with Physical Effects of Pain**

Plaintiff makes a number of arguments regarding the ALJ's handling of the evidence of physical manifestations of pain and the associated psychological effects. (Pl. Br. at 8-13.) Wrapped up in those arguments is the question whether the ALJ properly considered and weighed the opinions of the examining and state agency reviewing doctors.

The Ninth Circuit no longer accords special deference to the opinions of an examining physician. *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[ ] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting an examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F. 4th at 790. Nonetheless, in rejecting an examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

At the center of Plaintiff's arguments is the ALJ's consideration of the opinion of Dr. Shaunna Haley, Psy.D., a consultive examiner. Dr. Haley examined Plaintiff on

October 7, 2020, during the Covid-19 pandemic, and her examination consisted of reviewing one medical note completed by the Arizona Pain Center earlier in 2020, interviewing Plaintiff, and conducting a mini-mental status exam. (R. at 376–84.) Dr. Haley observed that Plaintiff exhibited restlessness, a dysphoric mood, and low energy, that he was "anxious to complete the evaluation so he could go home and rest," and that he reported he was "miserable" on account of pain. (R. at 376, 381.) However, "[h]e did not exhibit significant problems with concentration during the evaluation" and scored 28 out of 30 on the mini-mental status exam used to test memory recall, attention, language, and visual-spatial ability. (R. at 381–82.) From her observations, Dr. Haley opined that Plaintiff "has adopted the identity of an ill person" and would have "difficulty" in various functional areas, including "solving complex work-related problems," "multitasking and sustaining effort for long periods of time," "completing tasks in a timely manner," "interact[ing] with any people, coworkers or customers on a daily basis," and "handl[ing] stress . . . and adapt[ing] to changes in his routine." (R. at 383–84.)

Plaintiff now argues that, at step three of the five-step disability determination, the ALJ should have considered Dr. Haley's diagnostic impression that Plaintiff had "somatic symptom disorder" (R. at 382)—a condition also known as somatoform disorder in which chronic physical pain can cause abnormal and excessive psychological effects (Pl. Br. at 8–11)—to evaluate Plaintiff's CRPS under the mental disorder listings, that is, to essentially consider the psychological effects of CRPS on Plaintiff as a different listed impairment. As a basis for this argument, Plaintiff states that "Dr. Haley identified somatoform disorder as the closest analogous mental disorder to [Plaintiff's] pain condition and identified limitations in the 'B criteria' of disabling severity stemming from symptoms of pain." (Pl. Br. at 9.) That characterization overstates Dr. Haley's report. Moreover, the report does not substantiate the diagnosis, which state agency consultant Dr. Meier, Psy. D., points out. (R. at 97.) Plaintiff himself concedes that somatic symptom disorder "results in symptoms that cannot be explained by laboratory findings," whereas "CRPS is characterized by physical inflammatory response." (Pl. Br. at 9.) The ALJ did not err in

declining to consider the psychological effects of Plaintiff's CRPS as a separate listed impairment. The ALJ properly considered the severity of Plaintiff's mental impairment in determining whether it constituted or medically equaled listing 12.04, addressing depressive, bipolar, and related disorders. (R. at 24–25.)

In her consideration of Plaintiff's CRPS and depression as severe impairments, the ALJ did consider the psychological effects of Plaintiff's pain symptoms—to the extent they are supported by the medical record—in evaluating Plaintiff's functional limitations. The ALJ discounted portions of Dr. Haley's opinion of Plaintiff's limitations because they were based on only a snapshot—one examination—of Plaintiff's mental state and a review of one prior medical record. (R. at 30.) The ALJ also pointed out that the medical record contained no mental health treatment records for Plaintiff's reported psychological conditions (R. at 30); the Court agrees that, even if the psychological symptoms Plaintiff reported (and the severity thereof) arose from pain, one would expect a person experiencing those psychological symptoms to seek care for them.[1] In short, the ALJ properly found the limitations Dr. Haley identified to be overstated and unsupported by substantial evidence in the record and, by contrast, found the evaluations of the state agency psychological examiners consistent with and supported by substantial evidence in the record. (R. at 30, 32.) The Court finds no material error in the ALJ's evaluation of the mental health evidence.

### B. Plaintiff's Symptom Testimony

In his testimony before the ALJ (R. at 49–74), Plaintiff reported that, on account of pain that makes him feel miserable, he can only stand for 10 to 15 minutes at a time, he only walks to take the dogs to the backyard, and he takes naps for large parts of the day. He also reported that he takes a lot of pain medications daily that cause many debilitating side effects. Plaintiff now argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony. (Pl. Br. at 21–25.)

---

[1] Plaintiff points to no evidence that he sought but was unable to obtain mental health care.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).)). For example, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

The ALJ stated in conclusory form that, while Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 32.) To that end, the Court has difficulty discerning any specifics within the ALJ's Decision. In the Response, the Commissioner argues that "[t]he ALJ identified evidence showing that when Plaintiff complied with treatment recommendations, he improved." (Def. Br. at 3.) In support, the Commissioner points to evidence in the record that, in certain appointments with his pain specialists, Plaintiff reported an improvement in his quality of life of 30-40% with the consumption of pain medication. (Def. Br. at 3; R. at 348.) To begin with, the record shows that, over the relevant period, Plaintiff's reported pain level fluctuated but was never within a non-severe range. Moreover, in citing quality-of-life-improvement evidence in her Decision, the ALJ makes no connection between the reported improvement and Plaintiff's reports of continued severe symptoms and the associated effects on his daily functional capacity, nor is such a connection evident to the

Court. Indeed, in the same medical records as he reported an improvement in quality of life, Plaintiff reported a pain level of 9 out of 10. (R. at 345.) Even if Plaintiff's pain could be quantified as a 6 or 7 out of 10, those numbers do not mean that Plaintiff is not credible when he reports he is in so much pain that he cannot walk, can only stand for 15 minutes, and cannot stay up an entire day without napping as a result of pain, fatigue, and the side effects of his medications. Likewise, the ALJ does not correlate a 30-40% quality-of-life improvement resulting from the consumption of opioids with an ability to work full-time in the national economy considering Plaintiff's baseline impairments and associated pain.

The Commissioner also points to the ALJ's statements in the Decision that "Plaintiff was not always compliant with his treatment regimen." (Def. Br. at 4; R. at 28.) However, Plaintiff has provided good reasons for why that occurred, including that he lacked health insurance coverage to see certain specialists and could not afford other treatments. It is improper for an ALJ to count a claimant's lack of treatment against him if he has a valid reason for failing to seek treatment, such as a lack of health insurance. *Regenitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1297 (9th Cir. 1998) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition, if he cannot afford that treatment."). The ALJ also notes a medical record stating that, in one instance, Plaintiff forgot to take two of his myriad medications. (R. at 28, 321.) But such an isolated report is consistent with the reports that Plaintiff needs assistance with this very activity—taking medications—due to the side effects he experiences, including an inability to fully concentrate. (Reply at 6.) As Plaintiff argues, the brief period in which he did not take two medications is "not [a] clear and convincing reason[] to find [Plaintiff's] statements that he is in pain less convincing." (Reply at 6.)

The ALJ failed to provide any specific and clear reason supported by the record for discounting Plaintiff's symptom testimony, which was material error. The Court will thus grant Plaintiff's request to remand this case to the Social Security Administration for reconsideration of the evidence. (Pl. Br. at 16.)

**IT IS THEREFORE ORDERED** reversing the January 12, 2022 decision of the Administrative Law Judge (R. at 21–34) as affirmed by the Appeals Council (R. at 1–4), and remanding the case to the Social Security Administration for reconsideration of the evidence.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 5th day of June, 2024.

Honorable John J. Tuchi
United States District Judge